Good morning, Counsel. Good morning, Your Honors. If it pleases the Court, my name is William Frick. I represent Mrs. Koth and her husband. You can duck up a little bit if you can. Just move that closer there. I represent Mrs. Koth and her husband, Chun Thai. Okay. We raise two issues in this case, marriage interference with a previously granted the revocation of a previously granted right to reside with your spouse is an interference with a fundamental liberty interest and deserves heightened scrutiny. Counsel, I had trouble putting that argument in context. You're unquestionably right that there's a constitutional right to marry under well-established Supreme Court law. Yes, sir. But as I understand this case, no one is interfering with the right to marry. The claim is that she didn't marry, that it's a fraudulent marriage, and I don't see where there's any tension between enforcement of denial of visas for fraudulent marriages and the constitutional right to marry. A couple of things, Your Honor, on that. The liberty interest in marriage is also the right to live with your family. And the second thing is that marriage is a function of the state. The state isn't saying that they aren't married. I think it is. And if the U.S. government is saying, we don't believe that you're married. But the state of Washington, which is the entity that the states are the entities that are responsible for marriage in this country, the Washington state does recognize that marriage. But she got married in Cambodia. True, but it's still recognized in Washington. She's legally married. And it was originally granted. So the government is taking away a right that it has already granted. And some heightened scrutiny, rather than just a mere scintilla of evidence. I missed something there. You said it was originally granted. You don't mean the state of Washington has issued a marriage license? No, the USCIS originally approved this application. And it went to the embassy. There was apparently some sort of very brief interview. We don't know if the person who interviewed Mr. Chen spoke English. We don't know what happened with that interview. But based upon that interview, some information was given back that Mr. Chen didn't know his son's name. Or Mr. Chen didn't know why his wife hadn't visited him. And based upon this, he was then asked to prove that he didn't say these things. And we weren't given the evidence of this. We were given these bald allegations in letters from the USCIS that he'd said these things. We did not have the context. We were not able to ask the person who alleged these things what the context of it was. We were not really allowed to rebut it, only to say that it didn't happen. Well, you have the information now, right? We were given the information after every bit of the... My question is, you have it now. We have it now. The administrative process, Your Honor, though we did not have it during the administrative process, which... I just asked you if you have it now. I answered yes. All right, so you have it now, so you've had a chance to rebut it now. Tell me how you were prejudiced precisely by not having it. In other words, what did it show that you could have proven at the hearing? Give me an example. We could have written to the Department of State, asked our letter to be routed to the particular employee who was apparently identified by a pseudonym, what the context of these statements was, what other statements were asked of Mr. Chai. Mr. Chang, I'm sorry. What did he get right? Was this conducted in Cambodian? That's a very important question. But, counsel, with respect, you're not talking about just one thing here. What this deals with is a number of indicia that suggest that this was not a bona fide marriage. Do you agree that, in this case, this is not the marriage, it's the privilege of having the visa, right? That's what we're talking about here. It's not the wife's, if you will, right. It's whether or not the purported husband has the right, the advantage to take advantage of a visa. That's what we're talking about here, right? Your Honor, I think it's the same thing. It's the right of a family to live together. It's a U.S. citizen's right to live with her husband. I get your take on it. But in this particular case, under Section 1158, a whole bunch of subsections, I won't quote them to you, the burden of proof here is on your client, right? It's a burden by the preponderance of the evidence. Okay, but by that preponderance, it's your client's burden. And the position of the government in this case is that your client has not met burden. There are a number of allegations that are made, some of them more weighty, some less weighty. Perhaps the one of the initial interview is probably one of the least weighty. But the reality is there are a whole bunch of indicia, and your client had an opportunity, as my colleague has suggested here, to rebut these things. And in most instances, there was no rebuttal. Your Honor, I don't think, I disagree. There were five allegations that, number one, that they did not believe that Giovanni is the couple's child. Number two, that Mr. Cheng had not tried to see his child. That's silly. He's been trying to see his child since they filed for this visa. It's the USCIS who kept him from seeing his child. So for the USCIS to say that that's evidence that he... Okay, well, let's take the communication. The third one. Pictures, letters, anything like that. There's no evidence of that. There were pictures. There were perfectly reasonable pictures. That were sent to him? Yes, he has pictures of his child. Does he acknowledge that? He will acknowledge that. He does acknowledge that, Your Honor. Now? Yes, he does. As part of the proceedings? We do, yes. We do acknowledge that. We're looking at a record. We're a court of appeal. We're looking at the record here. What I find repeatedly is the government will say X, and you don't say, no, that didn't happen. You may say it didn't happen, but you don't provide any evidence to corroborate what you're saying. For example, the phone thing. You say the only communications were by prepaid phone cards. No evidence of purchases of such cards. No evidence of people watching the purchase of the cards or anything to back it up. Your Honor, this is a very particular community. These are Cambodians. They're very unsophisticated. As we indicate in the record, both Mr. Chang and Ms. Koth grew up under the Khmer Rouge. They grew up in refugee camps. They were concerned and still, on a daily basis, are mostly concerned with survival. They have never become literate. They don't have e-mail. They don't use e-mail. Counsel, most of the third world countries that I've been in where people can't afford to have computers at home because the countries are too poor, they have Internet cafes all the time. They go to Internet cafes and Skype each other if they're in different countries, and e-mail, JPEG pictures, and that kind of thing. I have been in those countries as well, Your Honor. Cambodia in 2003, 2004, 2007. I'm not sure that that was the case. It was. Okay, but it's not the case for everybody. It's the case for tourists. It's not necessarily the case for a very unsophisticated man. Whatever your client's sophistication, they were represented, right, through all these proceedings? Yes. And the lawyer, I'm sure if it's you, is a very capable, intelligent, bright person. The lawyer is the one who helps the client make the presentation. Notwithstanding that fact, we don't see in the record, in many instances, any kind of evidentiary rebuttal to what the government put out. That's what at least I'm struggling with. Your Honor, Mrs. Koth's declarations should be believed. She did not save those cards. She's not a person who writes. She barely writes in Khmer language. She doesn't write in English. She's completely unsophisticated in modern technology and modern communication. She speaks on the phone. She bought those cards. That's pretty sophisticated, isn't it? To buy a card at a convenience store? You know that you can communicate with somebody in another country by buying a phone card? That's not bad. Okay, that's, yes. A lot of us have family members who are not sophisticated, but if you go to an internet cafe, there are countless teenage boys who would just love to show their greater technological sophistication, and they help people. Well, I don't know that Mr. Cheng would have found one of those young boys, but I think to take away a fundamental liberty interest based upon speculation that they're not telling the truth. The speculation is that these people are really married. She and he have to show they're married. They are married, Your Honor. There's a marriage certificate. He went to the trouble of putting his name on his son's birth certificate, meaning that he is undoubtedly the father. That was done quite a bit after the birth, wasn't it? Four years later, he has to sign the document. What was the explanation as to why the father's name was not on the original birth certificate? He was not present at the birth, and Mrs. Koth says that the hospital, and I think this is very believable, the hospital told her she can't put his name on the birth certificate unless he's there to sign for it. That's not very believable. Usually the hospital insists on a father's name because if there's a welfare claim, the welfare agency wants to know who to go after for the child support. She could have put Bill Gates' name on there, Your Honor. I've never heard that assertion. That's why the hospital would not allow that. I've never heard that assertion before, that any hospital in this country requires a father to be present in order to get the name on the birth certificate. Was that corroborated in any way? Like, for instance, an affidavit from the hospital director or something like that? Your Honor, would you allow me to present that? Or on remand, we could present that. My question was, was that corroborated? Why not? Because her statement, I think, is believable. And I did not present it. So from ordinary experience, I think that's why my colleague and I are both wondering about some evidence that it's true. I mean, a lawyer I know was fishing when his kid was born, but he's still on the birth certificate. I would think that he signed it. Your Honor, one thing that— No, he didn't. He wasn't there. He was out fishing. Maybe he signed it sometime later. I don't know. I don't know if there's room for him to. These are different people. It's a different culture. They have been traumatized by what happened to them and how they grew up. So are you suggesting, counsel, that, getting back to what we started with, you agree your client, by preponderance of the evidence, has to show that this was a bona fide marriage. The government has come up with a variety of indicia suggesting that it was not. You say that's humbug. She says it was. He now says that it was. So we then would like to see whether you, by a preponderance of the evidence, have met this burden. Most of what you've said is these are believable people. This improbable thing happened. This improbable thing happened. This improbable thing happened. And the reason why you can't take it away is because it's a constitutionally protected right. Is that what your case is, basically? No, Your Honor. We believe that we have met the preponderance standard, which is 50% and a feather, as someone at the USCIS said to me the other day. We believe that we've met that standard and that both the USCIS and the district court were wrong in indicating that we haven't. We also believe that- You've got one minute left. Just make a list for us. What proves that they're actually married? The marriage certificate. The fact that they have pursued this litigation for almost ten years, that they haven't just given it up, is some indication of it. The marriage certificate, the fact that they have visited each other, there are pictures of the family together, there are affidavits from people who know them who indicate that they are. I believe that that should be sufficient for a U.S. citizen to be able to- One more thing, Your Honor. If the government is concerned that this is a fraudulent marriage, there are safeguards. When a green card is granted, the person has to go back in two years and show that he's still married, show that the marriage was still not fraudulent. That's enough of a safeguard that these people should be given the benefit of the doubt. By your standard, they should never be questioned in the first place. No, Your Honor. Fundamental right. No, I'm not saying- I'm saying that a fundamental right means that a government interest should be narrowly tailored. I think a clear and convincing standard for a revocation. Thank you, counsel. Thank you. We'll hear from the government. May it please the Court. John Inglis on behalf of the United States. Your Honors, USCIS did not abuse its discretion in revoking Plaintiff's Visa petition because they cannot establish they married in good faith with the intent to create a shared life together. USCIS's determination is based on a review of the record in its entirety. What shows-why aren't those things that plaintiffs listed? They've got a marriage certificate. There are pictures of them getting married. They're trying real hard to live together by litigating endlessly, and they've got these affidavits saying they're married. Why isn't that evidence such that it was not within USCIS's authority to deny them the visa based on marriage? The affidavits notably actually contradict their story. They say that in the affidavits, two of them state that plaintiffs started communicating with each other in 2006, and plaintiff's story is that they started communicating in 2007, and then in a whirlwind, I think, eight to ten day trip, met each other and got married. I don't see what's the matter with that. I mean, in our culture, it's customary to have love and courtship and marriage and that sort of thing. A lot of cultures, marriages are arranged and your wife is basically just plopped down in front of you, and here she is, you're getting married to this woman, or vice versa. Here he is, you're getting married to this man. I didn't mean to focus on the fact that it was an eight to ten day trip. Sorry, Your Honor. District court decided this case on summary judgment, right? That's correct, Your Honor. In other words, the court decided that, well, given this record, what the plaintiff showed, which I think is fairly summarized by counsel, is insufficient to sustain a holding that this is a bona fide marriage. I don't think that's right, is it? In other words, if you believe what the plaintiff put on, isn't that sufficient evidence to sustain a finding of a bona fide marriage? Well, this is an APA case, Your Honor. It's a record review. I don't know. It's not a straight APA case because it comes from the district court, right? And the proof is preponderance of the evidence, isn't it? And we reviewed, you know, district court judgments for clear error. But, see, this didn't get to clear error. This went on summary judgment. So, you know, I don't know if there's summary judgment in, you know, APA cases or not. But in the district court, I treat this as a summary judgment case. Is that wrong? In APA cases before the district courts, Your Honor, they are often decided by cross motions for summary judgment. And that's what happened here. Well, I'm not saying this should never be, but I'm saying in this case, on this record, is it fair to say that if the plaintiff's evidence is believed, it's insufficient to make out a prima facie case? The standard review before the district court, Your Honor, I'm trying to get Your Honor's question. The standard review before the district court was abuse of discretion. What do you mean by before the standard that the district court applied? Yes, that's correct. And there's the de novo review of the same record before this court. And, once again, the standard before this court is abuse of discretion. How could the district court do that when the government didn't even provide the record, right? I mean, you didn't disclose that interview, State Department interview, until the case was on appeal, did you? No, we provided that at the district court level, Your Honor. To the district court and the applicant? Yes, Your Honor. The same record that is before the court was provided to plaintiff at the beginning of that proceeding, and it was provided to the district court. Now, I'm talking about the record of the interview. Yes, and that is part of the record, Your Honor. That's what? That was part of the record. In the district court? Yes. Okay. So, on that record, then the district court reviews the judgment of, what is it, ICS? Wherever it is. USCIS, Your Honor. USCIS for abuse of discretion? Yes, pursuant to the APA. Under the APA standard? That's correct, Your Honor. So, it's not universal camera, substantial evidence on the record as a whole. It's abuse of discretion or arbitrary and capricious? Yes. That's the same thing, isn't it? Pretty much the same thing? I believe so. Maybe I'm missing it. All right. So, anyway, even though it comes up on summary judgment, it comes up under the standard of the APA. That's correct, which is an abuse of discretion. If it comes up under the standard of APA, that's the standard that the district court is supposed to apply. Yes, the APA abuse of discretion. Which is that, in other words, you make a summary judgment showing and the district court has to decide, is this showing amount of substantial evidence to support the judgment of the USCIS, right? That's correct. All right. There was cross motions also. I mean, plaintiffs had filed a motion simultaneously, and we had oppositions and replies. But the plaintiff's motion is cross motion decided by the same standard. Is the government's decision supported by substantial evidence, right? That's correct. In other words, it's not whether the plaintiff can make out a plaintiff-patient case. It really almost doesn't matter, does it, if USCIS doesn't believe the plaintiff? So plaintiff's burden before USCIS pursuant to 1361. No, I'm talking about burden in the district court. Well, the burden in district court is they need to show that USCIS's decision was abuse of discretion. It's not supported by substantial evidence. Yeah. And it doesn't matter that the plaintiff's case amounts to a prima facie case, right, of a bona fide marriage. Because USCIS has already made a decision that somebody on the plaintiff's side is not telling the truth or something like that. Well, plaintiff had two decisions before USCIS at the agency level. They made the initial determination that the marriage that plaintiff could not establish, that they married in good faith with the intent to create a shared life together. And then out of an abundance of caution, USCIS reopened the I-130, submitted a second request for evidence, basically twice telling plaintiffs the type of evidence that they would need to carry their burden of proof. And then when plaintiff failed to produce that evidence, they issued a second decision. So there have been quite a few determinations in this case, both at the district court and the agency level. I think Judge Kleinfeld's earlier question was if we look at the list provided by plaintiff's counsel, why does that not carry their burden of proof? My first comment is that the affidavits contradict their story in certain parts. In the affidavits, the affiants say that they began communicating in 2006, where plaintiff's story is that they began communicating in 2007. So that's a fairly significant discrepancy. Counsel, as you have sensed from the panel, because of the way this case came up, you have an unusual situation in a way because normally when you have sharply conflicting stories about fundamental aspects of the story, it's not appropriate for a summary judgment. But in this case, you have something that came up through an administrative procedure, and your position is it's APA, right? Yes. So in that situation, you've got in effect sub, well, they're judicial officers in a way, administrative law judges who have reviewed these matters. In this case, counsel and his clients were asked for supplementary evidence to back up their case two times, if I understand correctly. Is that right? Correct, Your Honor. So having looked at that, the judicial officer, as part of the administrative law proceeding, concluded that there was not substantial evidence to back up what they needed to show by preponderance of the evidence. So the district court was reviewing, not de novo, but in a way, was the district court reviewing this de novo when it came to a conclusion that it should be affirmed? The district court reviewed for abuse of discretion. Okay. So the district court reviewed for abuse of discretion. So basically all they're saying is that these people weighed credibility, looked at all these things. I don't find anything in the record to show that they're just dead wrong. Therefore, this is where I'm going to go. In our role, looking at abuse of discretion, we almost have to find that it got the law wrong in order to reverse this. Is that correct, that the district court got the law wrong? No, this court is reviewing USCIS's decision. It's a de novo review of what was before the district court. So this court, therefore, is reviewing for abuse of discretion USCIS's determinations. I'm confused by your answer. Okay. I'm sorry if I'm saying that. We are reviewing the district court's decision, right? This court, in this case, is actually reviewing. It's my understanding that you're reviewing USCIS's determination. Judge Zille made a determination in this case. Yes. It was appealed from him. He's a district court judge, right? Right. So we're reviewing the district court's review of the administrative law agency. Okay. My question to you is, you're saying the district court reviewed the administrative law judge's decision based on whether the administrative law judge abused discretion, right? Yes. You're saying that we, in turn, reviewed Judge Zille's decision based upon abuse of discretion. And I'm saying on that standard, unless there's some fact that just jumps up and we say, wait a minute. It can't be right. In effect, Judge Zille had to get the law wrong for us to reverse him. Is that correct? Is that the standard we're looking at here? Or he made a finding that's not supported by any evidence at all, right? I think if this court looks at Judge Zille's decision and determines that there was . . . that notwithstanding his opinion that USCIS's determination is arbitrary and capricious, this court can then reverse. Okay. But I still don't think you're answering my question. And we understand what Judge Zille did with respect to the administrative law judge. My question is, when we review Judge Zille's decision, do we review that for abuse of discretion? I don't think that's for abuse of discretion, Your Honor. I think that this court is making a de novo review of the USCIS. Maybe I'm wrong. That's my understanding is that they're making . . . Just ignore basically what Judge Zille did. We're just going to go back to . . . I think it's informative. I think it's useful. Help me on another detail. I'm sure I'm getting some facts wrong here. Right. I had thought there was only one visit, the marriage or sham marriage, where they had the picture of the ceremony. But then there is another picture where the father is with the putative son. Is that right? So there was the original . . . Two visits. There's two visits, Your Honor. There's the original visit in 2007 when they get married. And then there was another visit in, I believe it was 2012, after the second request for evidence was issued. And that's where the government asked for the DNA test. And rather than doing the DNA test, they flew to Cambodia and introduced the child. Was the government saying, we're not going to accept that anyone is anyone's child without a DNA test? Or was the government saying, you don't even know the kid's name, so we're not satisfied, and your name's not on the birth certificate, so at this point we're not satisfied that you're the kid's father. But if you want to prove it, you can take a DNA test. I think the government would have thought that if they could have proved paternity, that would have been pretty compelling evidence that this actually was a bona fide marriage, that it's unlikely that people would have a child, not in all situations, but many people would unlikely have a child to try to skirt immigration laws. Paternity can be proven aside from DNA, but DNA is a compelling method of proving paternity. One thing I would like to just make sure the Court is aware of, plaintiff . . . And it may mean that the child is not really the father's, the mother's been with somebody else, that kind of thing. I mean, I think that can be difficult, but they also want to use the child to try to prove the marriage. So at some point, you know, with the two requests for evidence . . . You can have either without the other. We're not telling them how they have to prove their case. Counsel, you can have a child without marriage, you can have marriage without a child. You can have marriage and a child by somebody else. There are a lot of possibilities. What I'm trying to find out here is, does USCIS require DNA tests routinely, or was this just an additional means of proof that Coff could have used? I think it was an additional means of proof. There was not a requirement that they . . . We did not require in this instance even that they do DNA. We said that you need to prove paternity, and this would be a good way of doing it. Can I just say one other thing, Your Honor? I know my time is up. If plaintiffs feel that this decision is wrong, we think that there should be prejudice with respect to this I-130. They can file another I-130. There's nothing here that would preclude them from making a subsequent application. There has been no finding of marriage fraud. It's just that they did not carry their burden of proof. Thank you, Your Honors, very much. Thank you. Thank you, both counsel, for your argument. We appreciate it. We appreciate how important this case is for the plaintiffs here. We take it very seriously. The case that's argued is submitted, and we stand at recess for the day.
judges: Kleinfeld, Tashima, M. Smith